NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PAUL G. MIRANNE,**

*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**

*Respondent*

---

2021-1497

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-19-0669-I-3.

---

Decided: October 8, 2021

---

PAUL G. MIRANNE, Pensacola, FL, pro se.

DANIEL HOFFMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, MARTIN F. HOCKEY, JR.

---

Before PROST, TARANTO, and HUGHES, *Circuit Judges.*

PER CURIAM.

Paul G. Miranne was an employee of the Department of the Navy. After Mr. Miranne sent a strongly worded, accusatory email to coworkers and supervisors suggesting that they were complicit in a conspiracy, the Navy fired him. He unsuccessfully appealed his termination to the Merit Systems Protection Board, which found the grounds for removal established and the removal penalty justified, and which rejected Mr. Miranne's affirmative defense of whistleblower retaliation. Mr. Miranne now appeals. We affirm the Board's decision.

I

Beginning in 1999, the Navy employed Mr. Miranne as a Personnel Psychologist at the Navy Advancement Center in Pensacola, Florida. In that position, Mr. Miranne had access to the Navy Marine Corps Intranet. His position was initially designated "non-sensitive," meaning that it was "a position of trust and ha[d] no effect on national security." SAppx. 51, Appx. 42.

On September 27, 2017, however, the Commanding Officer of the Navy Education and Training Professional Development and Technology Center (NETPDC), Captain Brooks, announced a change that would affect Mr. Miranne. Captain Brooks sent out, to a large internal audience, an email stating that personnel with access to the Navy Marine Corps Intranet would require a designation of at least "non-critical sensitive" to comply with Department of Defense and Navy policy. Appx. 92, 295. Such a designation means that a person fulfilling the duties of the position "could potentially cause damage to national security." SAppx. 51. Captain Brooks explained:

> In the last year, we have done a thorough review of all our positions in accordance with NETPDCINST 12510.2B. The review revealed we have multiple positions across the command that have an assigned position sensitivity of "non-sensitive" vice "non-critical sensitive." . . . .

> I have directed [Navy employee] N1 to proceed in
> updating the Position Descriptions (PDs) for those
> listed as "non-sensitive." I have also directed our
> Security Manager (N44) to simultaneously initiate
> Tier-3 background investigations as required.

Appx. 92.

After receiving Captain Brooks's email, Mr. Miranne contacted the Command Security Manager. Mr. Miranne expressed skepticism that anything he would do in his position could affect national security, and he asked, "Am I missing something?" Appx. 124. The Command Security Manager replied, "Yes, you are missing something," and explained why. Appx. 123.

The following month, in October 2017, Mr. Miranne again contacted the Command Security Manager for further clarification of his position's security clearance. He was told that supervisors were continuing to update position descriptions, but that his specific position description "requires a secret security clearance." Appx. 176. Over the following 19 months, Mr. Miranne inquired of various security staff and supervisors about the change in security clearance for his position.

By May 2019, Mr. Miranne viewed the policy change as a violation of the regulations governing national-security designations of positions and its adoption as a result of criminal or otherwise improper acts by many of his coworkers and supervisors. On May 9, 2019, Mr. Miranne emailed approximately 20 individuals, including his entire chain of command, to express disagreement with the Navy's policy change. One passage in the email states:

> ON ITS FACE, it should be obvious to all individuals receiving this email that our access to [the Navy
> Marine Corps Intranet] is not the reason for this
> action. I have surveyed countless coworkers and
> other individuals–military and civilian alike–who

> are all in agreement that our access to [the Intranet] poses no threat to national security. So why does NETPDC management continue with this charade? That's easy: it was necessary to implement the scheme developed by Cdr. Johnson and Mr. Hannan (and most of you all – wittingly or unwittingly) to essentially provide greater flexibility between the classified and unclassified branches of the Exam Development division. This, ladies and gentlemen, is commonly known as fraud: the explanation provided for the personnel action at issue was not the real reason for the personnel action. In legal parlance, it is considered a materially false, fictitious, or fraudulent statement or representation (I call it the Lanaro Law). When more than one individual is involved, it becomes a conspiracy to commit fraud.

Appx. 2.

As a result of the email, the Navy charged Mr. Miranne with disrespectful and improper conduct and eventually removed him from federal service based on that charge. Mr. Miranne appealed his removal to the Board under 5 U.S.C. chapters 75 and 77. In the appeal, he stated as an affirmative defense to the removal that he was removed in retaliation for whistleblowing—the May 9 email constituting the allegedly protected disclosure—in violation of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).

The administrative judge assigned by the Board, after a hearing, sustained the charge of disrespectful and improper conduct, affirmed the Navy's decision to remove Mr. Miranne as a proper penalty for the conduct, and rejected the whistleblower defense. Appx. 10. (We refer to the decision as that of the Board because the decision became the decision of the Board when Mr. Miranne did not seek full Board review within the prescribed time.) The Board described the May 2019 email as being "as delicate and

nuanced as a cannon blast" with "an air of moral superiority, abrasiveness, condescension, and profound disrespect which simply cannot be minimized or misinterpreted." SAppx. 14. The Board found that Mr. Miranne "showed dreadfully poor judgment" and that, given the nature of his position, termination was reasonable. SAppx. 15. And the Board concluded that Mr. Miranne was not protected under the Whistleblower Protection Act because it could not second-guess the relevant Navy decisions on security designations and, in addition, Mr. Miranne's belief about the activity he attacked, though genuinely held, was objectively unreasonable. SAppx. 18, 22.

The Board's decision became final on November 2, 2020. SAppx. 23. This court received Mr. Miranne's notice of appeal on January 2, 2021, ECF # 1, within the permitted 60 days, 5 U.S.C. § 7703(b)(1)(A). We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "Underlying factual determinations are reviewed for substantial evidence." *McMillan v. Dep't of Justice*, 812 F.3d 1364, 1371 (Fed. Cir. 2016). Mr. Miranne bears the burden of establishing error that justifies setting aside the Board's decision. *Fernandez v. Dep't of the Army*, 234 F.3d 553, 555 (Fed. Cir. 2000).

## A

We first address Mr. Miranne's challenge to the Board's rejection of his whistleblowing defense. To prove retaliation for whistleblowing as an affirmative defense, Mr. Miranne must show by a preponderance of the evidence that he made a protected disclosure under 5 U.S.C.

§ 2302(b)(8) or (9) that was a contributing factor to his termination. *Cahill v. MSPB*, 821 F.3d 1370, 1373 (Fed. Cir. 2016). Key here is the requirement that, for the asserted retaliation to exist, Mr. Miranne had to "reasonably" believe that the information he disclosed "evidences" a "violation of any law, rule, or regulation" or certain other wrongdoing. 5 U.S.C. § 2302(b)(8)(A).

We conclude that the Board's factual findings are supported by substantial evidence and, under the proper legal standard, support the determination that Mr. Miranne's beliefs about the information at issue were not reasonable. *See Giove v. Dep't of Transportation*, 230 F.3d 1333, 1338–39 (Fed. Cir. 2000) (applying substantial-evidence review to factual findings on reasonable-belief issue). This conclusion requires affirmance of the Board's rejection of the defense even apart from the Board's reliance on the limits on Board authorization to second-guess agency choices about what security designations are needed for particular positions.

First, Mr. Miranne points to the timing of his background investigation in suggesting that a belief in illegality of the Navy's redesignation of his position was reasonable. He cites a regulation stating that an agency "must" initiate a background investigation "no later than 14 working days after the change in designation[,]" 5 C.F.R. § 1400.204(b)(1) (emphasis added), and points to the fact that the Navy initiated his background investigation before his position was changed. *See* Pet. Br. 9. But assuming an adequate connection of this assertion to the May 9 disclosure, it is not reasonable to interpret this regulation as doing more than stating the latest possible time for an agency to initiate an investigation. Given the self-evident purpose to prevent service in a position having a particular designation for no more than two weeks without a background investigation getting started, it is not reasonable to read the regulation to prohibition initiation of the investigation even *before* the position changes its designation. Indeed, the regulations

contemplate just such an anticipatory investigation, providing that the agency "may provide advance notice of the redesignation of a position to allow time for completion of the forms, releases and other information needed from the incumbent to initiate the investigation." 5 C.F.R. § 1400.204(c).

There is substantial evidence that the Navy adopted its security changes in compliance with the cited regulations, not as a pretext for manipulating personnel. One security officer, Mr. Sganga testified that the policy change dates back to a 1995 executive order that "progressively gained momentum" as "more people [gained] access to more information[.]" SAppx. 55–56. The Navy implemented the executive order, he said, based on "an [Office of Personnel Management] memo and [Department of Defense] guidance[.]" SAppx. 56. He pointed to various supporting documents, including the Navy's and Defense's Security Manuals, as being significant to the policy change. SAppx. 59, 62. The Board found Mr. Sganga to be "a subject matter expert" who "credibly and consistently testified with supporting evidence that *this planned change was not only permitted but was required*[.]" Appx. 30. In contrast, Mr. Miranne called no witnesses to support his theory. The Board reasonably found Mr. Sganga to be more credible than Mr. Miranne.[1]

Having considered Mr. Miranne's various arguments for the reasonableness of his belief that the Navy conduct came within the statutory illegality/wrongdoing standard, we see no reversible error in the Board determination that

---

[1]    Mr. Miranne has requested that we take the extraordinary step of supplementing the record on which we are to adjudicate his petition for review by adding several emails that were not in the agency record. ECF # 14, # 18. We deny the request, concluding that Mr. Miranne has not met the demanding standards for such action.

his belief was not reasonable.  Accordingly, his challenge to the Board's rejection of his whistleblowing defense fails.

B

Mr. Miranne challenges the Board's finding that the Navy proved its charge of unprofessional conduct and reasonably chose removal as a penalty.  We reject this challenge.

The Board had substantial evidence to support its finding on the underlying conduct.  There was the May 9 email itself ("about as delicate and nuanced as a cannon blast," SAppx. 14), and a supervisor's reaction to the email ("the most disrespectful and unprofessional email I have seen or received in my 35 years of federal service," SAppx. 16).  The Board could reasonably find the charge supported despite Mr. Miranne's steadfast view that the tone was "justified." SAppx. 13.

As to the penalty, the Board found the testimony of the deciding official, Mr. Jackson, regarding his analysis of both mitigating and aggravating factors to be "detailed and consistent," and the Board also found that Mr. Jackson's "demeanor was thoughtful" and "calm" and that Mr. Jackson was "forthright about his reasons for removing the appellant."  SAppx. 18.  This court cannot overturn an agency's choice of "penalty unless it is unauthorized or exceeds the bounds of reasonableness because it is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion, or where the record is devoid of any basis demonstrating reasonableness." *Dominguez v. Dep't of Air Force,* 803 F.2d 680, 684 (Fed. Cir. 1986).  Here, there was some evidence that Mr. Miranne's email fits into a larger pattern of similar conduct over the years, despite prior warnings and lesser discipline, some of which Mr. Miranne disputes.  But it is evident that the determinative factor in the removal decision was the assessment that the May 9 email was exceptionally offensive and manifested "dreadfully poor judgment," which "no

doubt would have detracted from the appellant's character and reputation as a Personnel Psychologist in any professional office." SAppx. 15. Despite Mr. Miranne's effort to show that the email does not fairly impair his ability to succeed in his position, Pet. Br. 18–22, the Navy did not act unreasonably in concluding otherwise or, therefore, in deciding to remove Mr. Miranne from his position.

## CONCLUSION

We have considered Mr. Miranne's remaining arguments and conclude that they are without merit. For the reasons discussed above, we affirm the decision of the Board.

The parties shall bear their own costs.

**AFFIRMED**